**COASTAL STATES GAS CORPORATION, Plaintiff,**

v.

**DEPARTMENT OF ENERGY et al., Defendants.**

Civ. A. No. 79–267.

United States District Court,
D. Delaware.

Aug. 11, 1980.

William O. LaMotte, III, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Sim Lake, Fulbright & Jaworski, Houston, Tex., for plaintiff.

James W. Garvin, Jr., U. S. Atty., John X. Denney, Jr., Asst. U. S. Atty., Dept. of Justice, Wilmington, Del., Alice Daniel, Acting Asst. Atty. Gen., Arthur E. Gowran, and Janet L. Steckel, Washington, D. C., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This dispute arises out of an administrative adjudication within the Department of Energy ("DOE") concerning certain sales of petroleum products by plaintiff Coastal Corporation ("Coastal"). Presently before the Court are Coastal's motion for a preliminary injunction and DOE's motion to dismiss for lack of ripeness.

## I. BACKGROUND

On September 6, 1978, DOE's Office of Special Counsel for Compliance ("OSC") issued a Proposed Remedial Order ("PRO") to Coastal in which OSC alleged that 33 sales of petroleum products to 18 separate customers were regulated sales, requiring inclusion of them in Coastal's monthly reports (Form FEO–96) to DOE and its predecessor agencies. The ensuing Remedial Order ("RO") proceeding was to be adjudicated by DOE's Office of Hearings and Appeals ("OHA").

On November 21, 1978, OHA received written comments from OSC suggesting that all of Coastal's customers in the 33 transactions be afforded the opportunity to participate in the RO proceeding as "aggrieved parties," as that term was used in 10 C.F.R. § 205.194, 43 Fed.Reg. 3995 (January 31, 1978). (Doc. No. 8; Exh. D). Coastal's response to OSC's comments was received by OHA on December 5, 1978. (Doc. No. 8; Exh. F). In that filing, Coastal notified OHA of its intent to submit substantive comments on the issue on or before December 26, 1978. By December 5, however, OHA already had determined that the customers were to be included as aggrieved parties. Coastal was informed of this decision in a December 12, 1978 letter from OHA. (Doc. No. 8; Exh. G).

Coastal filed a December 22, 1978 motion to vacate OHA's December 12 order (Doc. No. 8; Exh. H), addressing to a limited extent the merits of the customer participation issue and what Coastal perceived as a denial of due process, but noting that its discussion of these issues was not "to be considered as constituting a complete statement of Coastal's objections to allowing the customers to participate . . . ." (*Id.* at 10). OHA's response was a January 2, 1979 telegram reiterating OHA's conclusion that the customers should be treated as aggrieved parties, and repeating the warning first contained in the December 12 order that failure by Coastal to serve the customers with copies of its Statement of Objections to the PRO would result in dismissal of those Objections. (Doc. No. 8; Exh. I). Coastal served the customers on January 4, 1979.

Seeking further review of the customer participation decision, Coastal filed on March 20, 1979 a Petition for Special Redress or Other Relief pursuant to 10 C.F.R. § 205.230. (Doc. No. 8; Exh. L). By virtue of 10 C.F.R. § 205.237(b), orders granting or denying such petitions must state that they are final orders of the DOE of which petitioners may seek judicial review. In an April 30, 1979 Decision and Order, OHA rejected the arguments advanced by Coastal and reaffirmed the decision permitting customer participation. (Doc. No. 8; Exh. M). However, OHA did not treat Coastal's filing as a Petition for Special Redress. Rather, it was restyled as a "Motion to Limit Participation" on the basis that a Petition for Special Redress was appropriate only when no other remedy was available. Here, OHA reasoned, "a remedy was available through a motion filed directly in the enforcement action." (*Id.*). Accordingly, the April 30 Decision and Order stated that it was an interlocutory order, subject to appeal only upon the issuance of a final order in the RO proceeding.

Coastal's final effort to appeal the customer participation decision administrative-

ly was a May 30, 1973 Notice of Appeal to the Federal Energy Regulatory Commission ("FERC"). On July 5, 1979, FERC rejected Coastal's appeal for lack of jurisdiction.

Coastal commenced the instant litigation on June 5, 1979. Subsequent to the decision by FERC, Coastal filed its motion for a preliminary injunction on July 23, 1979. In support of its request for injunction, Coastal alleged that it has suffered, and will continue to suffer, irreparable harm by virtue of the erroneous inclusion of the customers in the RO proceeding, the failure of DOE to follow its own regulations, and the unauthorized restyling and denial of its Petition for Special Redress.

DOE, in addition to answering the motion for a preliminary injunction, filed a motion to dismiss on August 15, 1979. DOE contends that the Court lacks jurisdiction over this litigation because the controversy is not ripe for adjudication. It argues that Coastal cannot make a concrete showing of harm from OHA's decision until a final order, adverse to Coastal, emanates from the RO proceeding, and judicial review should await such an outcome.

While these motions were undergoing briefing by the parties, Coastal filed a supplemental complaint on September 5, 1979, alleging that *ex parte* communications between OHA and OSC and between OHA and one or more of Coastal's customers had taken place. These communications were said to have led unlawfully to the inclusion of the customers in the RO proceeding and to the decision by OHA to restyle Coastal's Petition for Special Redress in an effort to preclude judicial review. In addition, Coastal alleged that OHA had prejudged the customer participation issue.

The contentions raised in the supplemental complaint prompted a dispute concerning discovery, culminating in Opinions on October 5 and November 21, 1979, 84 F.R.D. 278, as well as a January 23, 1980 hearing.[1]

Thereafter briefing and oral argument on the instant motions took place.

In support of its motion, Coastal contends that its customers were improperly considered aggrieved parties by OHA, since issuance of the Remedial Order proposed by OSC would benefit the customers rather than "adversely affect" them. 10 C.F.R. § 205.2. Inclusion of the customers, it is urged, was therefore a violation by DOE of its own regulations. Coastal also argues that the restyling of its Petition for Special Redress by OHA was in direct violation of DOE's regulations. Finally, Coastal asserts that the means employed by OHA in arriving at its decision to permit customer participation deprived Coastal of its right to due process.

While DOE disagrees with Coastal's position that inclusion of the customers was contrary to the governing regulations, its principal argument concerns a purported lack of ripeness in Coastal's claims. DOE contends that the order permitting customer participation was an interlocutory procedural ruling within an ongoing RO adjudication, and that judicial review of such an order must await a final ruling by the agency on the Remedial Order.

## II. DISCUSSION

The following discussion addresses the issues raised by Coastal to support the view that judicial review of this dispute may be had at the present time. Inasmuch as the Court agrees that Coastal's claims are not ripe for adjudication, it is unnecessary to reach the question of the propriety of customer participation. Accordingly, no view is expressed as to that issue, which will be subject to review should the RO proceeding terminate adversely to Coastal.

## A. THE PETITION FOR SPECIAL REDRESS

Coastal contends that by virtue of DOE's own regulations, the agency order in issue here, the April 30, 1979 denial of Coastal's

---

1. Coastal was permitted to take discovery limited to the question of whether the DOE's conduct brought the case within the "fundamental infirmity" exception to the ripeness doctrine. *See, e. g., First Jersey Securities, Inc. v. Bergen,*

605 F.2d 690, 699 n.6 (3d Cir. 1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). Coastal's claims were narrowed by rulings made at the January 23, 1980 hearing on Coastal's motion to compel. (Tr. at 27–30).

Petition for Special Redress, was a final order of DOE from which immediate judicial review was available. OHA's decision to restyle that filing as a Motion to Limit Participation, it is argued, cannot eliminate the appealability of its order. DOE contends that a Petition for Special Redress was an inappropriate procedure for Coastal's challenge to the customer participation decision. According to DOE, a motion filed directly in the enforcement action was Coastal's only available recourse, thereby justifying DOE's restyling of the motion and the accompanying declaration that denial of the motion was an interlocutory order.

Pursuant to Section 21 of the Federal Energy Administration Act of 1974, 15 U.S.C. § 780, DOE has promulgated regulations governing the filing and disposition of petitions for special redress or other relief. 10 C.F.R. §§ 205.230–37. Several of those regulations are particularly relevant:

§ 205.231 Who may file.

Any person aggrieved by the regulations contained in 10 C.F.R. Ch. II may file a petition under this subject.

\* \* \* \* \* \*

§ 205.236 [DOE] evaluation of request.

(b) *Criteria.* (1) The [DOE] will dismiss without prejudice a "Petition for Special Redress or Other Relief" if it determines that another more appropriate proceeding is provided by this part. Upon that determination, the Office will transmit the petition to the [DOE] Office responsible for such other proceeding and the petition thereafter will be processed as an application or request for such other [DOE] action. The petitioner shall be given a reasonable period of time to conform the petition to the procedural requirements of the other proceeding, if necessary.

\* \* \* \* \* \*

§ 205.237 Decision and response.

2. Coastal's Petition for Special Redress was captioned "In The Matter of COASTAL STATES GAS CORPORATION Proposed Remedial Order Issued September 6, 1978: Case No. _____." The introductory paragraph of the Petition referenced the case number of the

(b) The order denying or granting the petition shall include a written statement setting forth the relevant facts and legal basis for the order. Such order shall state that it is a final order of the [DOE] of which the petitioner may seek judicial review.

It is clear from the text of this last regulation that OHA's April 30, 1979 Order would be subject to judicial review if Coastal's March 20, 1979 filing had raised issues properly the subject of a Petition for Special Redress. OHA's restyling of it as a Motion to Limit Participation could not have eliminated the appealability that attached by operation of the regulation.

■ The Court agrees with DOE, however, in its assertion that OHA was justified in concluding that a more appropriate proceeding than a Petition for Special Redress was available for Coastal's March 20, 1979 filing. DOE's interpretation of its own procedural regulations, if not unreasonable, is entitled to deference by the courts. *See Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965); *United States v. Lieb,* 462 F.2d 1161, 1166 (Em.App.1972). I conclude that DOE's interpretation of the regulations in question is reasonable.

It is clear from a literal reading of § 205.236(b) that Petitions for Special Redress will not be entertained by DOE if a more appropriate mechanism for proceeding with the same problem exists. In the instant case, the more appropriate proceeding was the enforcement action to which the customer participation question was relevant.[2] Were Coastal's contrary view adopted, the most trivial procedural matters decided adversely to a litigant before OHA could become the subject of a Petition for Special Redress, and hence immediately judicially reviewable. Such a result would eliminate all requirements of final agency action before appeal, would protract the administrative adjudication process to an

RO proceeding in which the customer participation decision had been rendered. (Doc. No. 8; Exh. L). Coastal's view of the Petition as a matter separate from the RO proceeding was not shared by DOE. (Doc. No. 8; Exh. M).

intolerable degree, and would cast the judiciary in the role of overseers of minor procedural squabbles at the agency level. Effective functioning of the administrative process could not long survive such a scheme.

Since Coastal's petition sought the reversal of a procedural order made in an ongoing enforcement proceeding, rather than the "extraordinary" relief anticipated by 10 C.F.R. § 205.230(b), consideration of the petition by OHA as a motion within the context of the enforcement action was proper. The foundation for immediate judicial review of the customer participation decision therefore must rest on some basis other than the regulatory pronouncement of finality contained in 10 C.F.R. § 205.237(b).

### B. SATISFACTION OF THE RIPENESS REQUIREMENTS

The parties have framed the predominant issue as one of ripeness,[3] focusing their discussion on the factors enumerated in the *Abbott Laboratories* triology: *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Association v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967); *Gardner v. Toilet Goods Association*, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). Were I writing on a clean slate, I would be inclined to reject this mode of analysis and to apply the *Abbott Laboratories* criteria only in the context of pre-enforcement challenges to agency regulations. Controversies of the type presented in the instant case seem most profitably viewed in terms of the finality considerations arising under 28 U.S.C. § 1291. *See infra* at 9–10. Case law within this Circuit and elsewhere has not confined the *Abbott Laboratories* test to pre-enforcement review, however, applying it in addition to determine ripeness in the context of a challenge to an interpretive ruling by the Comptroller of the Currency,

*Independent Bankers Association of America v. Smith*, 534 F.2d 921, 926–30 (D.C.Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 141 (1976), and to "extra–enforcement" challenges to F.T.C. subpoenas, *Wearly v. F. T. C.*, 616 F.2d 662, 666–67 (3d Cir. 1980); *Exxon Corp. v. F. T. C.*, 588 F.2d 895, 901 (3d Cir. 1978). *See also Borg–Warner Corp. v. F. T. C.*, C.A. No. 79–294 (D.Del. February 26, 1980) (applying *Abbott Laboratories* test to review of denial of a protective order in the course of agency adjudication). While the contours of "extra–enforcement" review have not yet been fully defined, I reluctantly conclude that the instant case must be considered as falling within its boundaries, and that application of the *Abbott Laboratories* criteria must be undertaken.

In formulating its two–pronged ripeness test, the Supreme Court stated:

> Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.*

387 U.S. at 148–49, 87 S.Ct. at 1515 (footnote omitted) (emphasis added). The "fitness" aspect involves an evaluation of the following factors: whether the issue presents a purely legal question; whether a specific application of the agency ruling in question will place judicial review on a "much surer footing"; and whether the agency action was final.[4] *See Toilet Goods*

---

**3.** In the course of briefing and oral argument, both parties agree that the disputes in this litigation satisfy the "case or controversy" requirement of Article III of the United States Constitution. Consequently, the ripeness issue presented does not involve the jurisdictional inquiry whether the Court has the authority to hear this matter, but rather the jurisprudential

inquiry whether consideration of this case should await further crystallization of the issues or a further showing of concrete harm to the complaining party.

**4.** In the *Abbott Laboratories* trilogy, Chapter 7 of the Administrative Procedure Act provided the requirement of "final agency action." 5

*Association v. Gardner, supra,* 387 U.S. at 162–64, 87 S.Ct. at 1523–1525; *Standard Oil Co. v. Department of Energy,* 596 F.2d 1029, 1039 (Em.App.1978). The "hardship" aspect is satisfied when the challenging party can demonstrate that the agency action will have "an immediate and direct impact" upon its conduct of its affairs, *Standard Oil, supra,* 596 F.2d at 1039, or, put another way, that the agency action "puts the complaining party on the horns of a dilemma" by requiring either compliance with an agency ruling that entails a substantial change in its conduct or the risk of a serious penalty for non–compliance. *A. O. Smith Corp. v. F.T.C.,* 530 F.2d 515, 524 (3d Cir. 1976). *See also Abbott Laboratories, supra,* 387 U.S. at 153, 87 S.Ct. at 1517–1518.

■ Coastal fails to satisfy both the fitness and the hardship requirements of the *Abbott Laboratories* test. As to the fitness aspect, the questions presented are purely legal and arise in the context of a specific application of an agency ruling to the facts of a particular case. However, the agency action in question here lacks the requisite finality to overcome a ripeness challenge.

Finality is to be defined in pragmatic terms. *See Abbott Laboratories, supra,* 387 U.S. at 149, 87 S.Ct. at 1515–1516; *Conway Corp. v. Federal Power Commission,* 510 F.2d 1264, 1267 (D.C.Cir.1975), *aff'd,* 426 U.S. 271, 96 S.Ct. 1999, 48 L.Ed.2d 626 (1976). *Cf. Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). DOE concedes that the issue of customer participation is not subject to further consideration by OHA, and

in that sense its order is final. The customer participation decision is not the final judgment in the administrative proceeding, however, but is instead one of a number of procedural decisions that will be rendered in the course of this or any other adjudication. Orders of this type, whether they permit intervention, admit or exclude evidence, *see, e. g., Ecology Action v. Atomic Energy Commission,* 492 F.2d 998 (2d Cir. 1974); *Thermal Ecology Must Be Preserved v. Atomic Energy Commission,* 433 F.2d 524 (D.C.Cir.1970) (per curiam), or otherwise define the breadth of an adjudication, are considered interlocutory in nature despite the fact that the agency will not reconsider the order before rendering a final judgment. If the agency errs in a procedural ruling, a final judgment adverse to the challenging party is subject to reversal by a reviewing court because of such error. *Thermal Ecology, supra,* 433 F.2d at 526.

The differences between finality considerations in cases of pre–enforcement review of regulations or interpretations, such as *Abbott Laboratories,* and those applicable to interim procedural rulings of the type presented here were recognized in *National Automatic Laundry and Cleaning Council v. Shultz,* 443 F.2d 689 (D.C.Cir.1971):

We may put to one side the kind of "finality" question that may arise when interim rulings are made in the course of a proceeding that still has a course to run in terms of its own frame of reference, in order to determine whether or not an agency will take an action in accordance with a notice it has issued. In cases of

U.S.C. § 704. The A.P.A. does not govern the instant litigation, as DOE administrative action is exempt from the requirements of Chapter 7 by virtue of § 207(a) of the Economic Stabilization Act of 1970, as amended, 12 U.S.C. § 1904 note § 207(a) ("ESA"). Judicial review of DOE action is governed instead by § 211 of ESA, which reads in pertinent part:

(a) The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy; . . . .

The "cases or controversies" language of § 211 has not dispensed with the requirement of final agency action, however, as considerations of ripeness and exhaustion of administrative remedies still must be accommodated. *See, e. g., Standard Oil Co. v. Department of Energy,* 596 F.2d 1029, 1039 (Em.App.1978); *Consumers Union of United States, Inc. v. Cost of Living Council,* 491 F.2d 1396, 1398–1400 (Em.App.), *cert. denied,* 416 U.S. 984, 94 S.Ct. 2387, 40 L.Ed.2d 761 (1974).

such an interlocutory ruling the process of administrative decision–making is still at a stage where the intervention of judicial review will "disrupt the orderly process of adjudication." *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic* [400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970)]. But with the authoritative interpretative ruling by [the defendant] the agency's interpretative action has come to an end, and there is no fair basis for saying this process will be disrupted by judicial review. 443 F.2d at 700–01.

To be sure, certain interim rulings are considered final and subject to immediate judicial review, as, for example, where intervention is *denied. See Conway Corporation v. Federal Power Commission, supra,* 510 F.2d at 1267; *Interstate Broadcasting Co. v. United States,* 286 F.2d 539, 541 (D.C.Cir.1960). In such cases, the rights of the party seeking intervention are effectively abrogated by the order in question.

The customer participation decision in the instant case is most analogous to an order of a District Court in which permission to intervene under Fed.R.Civ.P. 24 is *granted.*[5] Such orders may not be appealed immediately by a party who opposed intervention. Review by a Circuit Court of Appeals must await the final judgment of the District Court. *Equal Employment Opportunity Commission v. American Telephone and Telegraph Co.,* 506 F.2d 735, 742 (3d Cir. 1974); FAC *Wright & A. Miller,* Federal

Practice and Procedure: Civil § 1923 (1972).

Drawing on this analogy, Coastal contends that the "collateral order" doctrine first announced by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), supports the immediate reviewability of OHA's April 30, 1979 order. Coastal relies principally upon *Marine Petroleum Co. v. Champlin Petroleum Co.,* No. 8–4 (Em.App. February 25, 1980), wherein the Temporary Emergency Court of Appeals recognized the appealability of a District Court order denying a motion to dismiss in a highly unusual procedural context. In that case, DOE had been joined as a party to an action between two private litigants, although no claims for relief by or against DOE were asserted. *Id.* at 4. The District Court's order denying DOE's motion to dismiss was considered final, among other reasons, because the absence of relief sought by or from DOE would produce no final result on the merits from which DOE could appeal. *Id.* at 21. DOE's sole basis for appeal would have been its participation in the litigation rather than the results of the litigation. While not specifically articulated, there was no Article III case or controversy with respect to DOE. Accordingly, the District Court's order "concerned a collateral matter that could not be reviewed effectively on appeal from the final judgment." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974). In the instant case, review of the customer partici-

---

5. The "final order" requirement of 28 U.S.C. § 1291, governing appeals of District Court orders, is instructive when considering questions of finality of administrative rulings. *See Community Broadcasting of Boston, Inc. v. Federal Communications Commission,* 546 F.2d 1022, 1024 (D.C.Cir.1976); *Interstate Broadcasting Co. v. United States, supra,* 286 F.2d at 541. The analogy is not weakened by the inapplicability here of Chapter 7 of the Administrative Procedure Act. *See* note 4, *supra.*

The central question presented by this case is to determine *when* the judiciary should inject itself into an agency's decision–making process. Doctrinal labels such as "ripeness" or "finality" frequently serve to retard rather than advance resolution of this question. *See* page

1304, *supra.* It is noted, however, that this inquiry is similar to that undertaken by Courts of Appeals in determining the appealability of certain interlocutory orders of District Courts. There, Courts of Appeals must accord the requirement of finality a practical rather than a technical construction, and must balance competing considerations of judicial economy on the one hand against the danger of denying justice by delay on the other. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974). This evaluation, while more than faintly reminiscent of the ripeness test articulated in *Abbott Laboratories,* is arguably of greater assistance than the *Abbott* formula in resolving the issue in the instant case.

pation decision will be available to Coastal should it lose on the merits of the RO proceeding, and the collateral order doctrine therefore is unavailing.

Coastal also fails to satisfy the hardship aspect of the *Abbott Laboratories* test. It concedes (Doc. No. 53 at 88) that it cannot demonstrate the "horns of a dilemma" characteristic of pre–enforcement review cases that have overcome ripeness challenges. *See, e. g., A. O. Smith Corp. v. F.T.C.,* supra, 530 F.2d at 524. Nevertheless, it contends that the burdens imposed on it by OHA's April 30, 1978 order constitute sufficient hardship to permit judicial review at this time.

Coastal points first to the actual hardship imposed by the order, which entails additional responses to motions and discovery requests filed by the customers, a disruption of the "adversarial balance" previously existing between Coastal and OSC, and a general expansion of the scope of the RO proceeding.[6] This alleged harm is of the type generally associated with the burdens of litigation, and does not impose onerous financial consequences or require a substantial change in the conduct of Coastal's day–to–day affairs. It is well settled that the burden and expense of litigation, without more, do not constitute sufficient hardship to justify immediate review. *See Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 51–52, 58 S.Ct. 459, 463–465, 82 L.Ed. 638 (1938); *Central Hudson Gas & Electric Corp. v. EPA,* 587 F.2d 549, 559 (2d Cir. 1978); *Barnes v. Chatterton,* 515 F.2d 916, 921 (3d Cir. 1975).

Coastal argues additionally that the hardship test can be met by a showing that an administrative agency has violated its own rules or regulations. *See Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363,

77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (hereinafter *"Accardi"*); *Kelly v. Railroad Retirement Bd.,* 625 F.2d 486 (3d Cir. 1980). In the instant case, DOE is said to have violated its own regulations regarding participation by "aggrieved parties" when it included Coastal's customers. This violation of its own regulations, Coastal argues, amounts to a denial to Coastal of the rights guaranteed by those regulations, and consequently to a denial of due process.

The *Accardi* doctrine should not be read so broadly.

> It is not every disregard of its regulations by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of [the agency].

*Bates v. Sponberg,* 547 F.2d 325, 329–30 (6th Cir. 1976). Invalidation of agency actions for violations of the agency's regulations follows instead from a rule of administrative law. *Id.*

Were Coastal's view of the *Accardi* doctrine adopted, a wide variety of agency procedural rulings would become subject to immediate review. For example, an agency decision admitting evidence arguably excluded by one of the agency's regulations, or a ruling permitting the filing of a brief several days after expiration of a regulatory deadline, could be said to establish a violation by the agency of its own regulations. Yet review of these alleged errors must await a final decision by the agency in order to gauge their effects, if any, on the rights of the party objecting to them.

In the instant case, OHA has issued an order based on its interpretation of the

---

**6.** Coastal asserts that the customers are seeking refunds of the alleged overcharges, while OSC sought only recomputation of Coastal's forms FEO–96. However, should OSC prevail in the RO proceeding, a second proceeding could be instituted by OSC in which refunds could be obtained.

DOE regulation governing aggrieved parties. That interpretation and resulting order may or may not be incorrect, and may or may not supply the basis for a reversal by a reviewing court of a Remedial Order adverse to Coastal. The order has not, however, produced "a procedure which in itself impinges upon due process rights." Accordingly, Coastal has failed to demonstrate the "hardship *per se*" requisite to a denial of due process in the administrative procedure context.

## C. EXCEPTIONS TO THE RIPENESS REQUIREMENT

Coastal next contends that judicial review at this time is appropriate under either of two exceptions to the ripeness requirement: (1) when there would be no adequate review of the agency action complained of after the final administrative resolution of the RO proceeding; or (2) when there is a clear and unambiguous statutory or constitutional violation.[7] *See First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). The court in *First Jersey* cautioned that

" '[O]nly rarely, however, will "preliminary [or] procedural . . . agency action" threaten so irreparable an injury as to justify interlocutory resort to corrective judicial process.' "

605 F.2d at 696. (Citation omitted.)

As to the first exception, Coastal asserts an absence of adequate judicial review of OHA's customer participation decision at the conclusion of the RO proceeding. If the RO proceeding terminates favorably to Coastal, it argues, the issue of customer participation would become moot. This reasoning is one of the bedrock principles supporting the final order requirement. As such, it strengthens rather than undermines

the ripeness argument advanced by DOE and provides no basis for immediate review.

Coastal argues alternatively that later review of a Remedial Order adverse to Coastal would focus only on the sales transactions in question rather than on procedural rulings such as the participation by the customers. Coastal has offered no reason, however, and the Court knows of none, why this would be the case. On the contrary, it appears that procedural error by the agency, if prejudicial to Coastal's rights, might provide a basis for reversal of the agency's final order. *See, e. g., Thermal Ecology Must Be Preserved v. Atomic Energy Commission, supra*, 433 F.2d at 526. The Court recognizes that a successful appeal by Coastal at a later stage could not remedy the interim harm of responding to the various filings and discovery requests of the customers. This potential for irremediable harm is present whenever an agency or a lower court issues an interlocutory order denying a motion to dismiss, ordering discovery, or in some other fashion requiring litigation efforts and expenses that hindsight may show to have been unnecessary. Nevertheless, this potential for harm is outweighed by considerations of orderly adjudication and the integrity of the administrative process. *See Myers v. Bethlehem Shipbuilding Corp., supra*, 303 U.S. at 51–52, 58 S.Ct. at 463–465; *First Jersey Securities, Inc. v. Bergen, supra*, 605 F.2d at 697; *Barnes v. Chatterton, supra*, 515 F.2d at 921.

In its final argument, Coastal contends that the administrative proceeding has been infected by a fundamental infirmity of sufficient constitutional dimension to warrant immediate review. This Court's November 21, 1979· Opinion noted that the fundamental infirmity exception is unavailable when the responding agency denies or otherwise controverts allegations of unlawful *ex parte* contacts. Coastal's claims have been narrowed by the Court's earlier rulings, since

---

**7.** The latter was referred to as the "fundamental infirmity" exception in the Court's Opinions of October 5 and November 21, 1979.

DOE has denied that *ex parte* communications were initiated by OHA to accomplish the inclusion of the customers, to deny Coastal the right to a fair and impartial hearing, or to restyle the Petition for Special Redress as a Motion to Limit Participation. (Doc. No. 47 at 28–29). *See Maremont Corp. v. FTC,* 431 F.2d 124, 128 (7th Cir. 1970); *National Lawyers Guild v. Brownell,* 225 F.2d 552, 555 (D.C.Cir.1955), *cert. denied,* 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457 (1956).

The surviving claim, which DOE has not denied, involves the alleged prejudgment of the customer participation issue by OHA. As noted earlier, OHA reached its decision to permit customer participation after receiving comments on that issue from OSC, but before receiving Coastal's comments on December 5, 1978. Coastal first addressed the merits of customer participation in a December 22, 1978 filing, although it noted therein that it was not making a complete argument on the issue. OHA's January 2, 1980 telegram rejected Coastal's request, and ordered Coastal to serve its customers with copies of its Statement of Objections to the PRO. Coastal complied with this order on January 4, 1980. The Court concludes that as of that time, Coastal had been afforded no meaningful opportunity to express its views on participation by the customers.

On March 20, 1979, Coastal filed its Petition for Special Redress, a 42-page document containing a wide range of arguments opposing customer participation. These arguments were rejected by OHA in its April 30, 1979 Decision and Order.

Assuming *arguendo* that OHA's prejudgment of the issue in December, 1978 was a due process violation, that violation was cured by OHA's subsequent consideration of Coastal's March 20, 1979 arguments. *See Exxon Corp. v. F.T.C.,* 411 F.Supp. 1362, 1370 (D.Del.1976). Coastal seeks to distinguish *Exxon* on the basis that the improper order issued *ex parte* there was reconsidered *before* Exxon was required to comply

with its terms. Here, the December 5 order is said to have been self-executing, requiring compliance by Coastal prior to March 20, 1979.

The compliance required of Coastal consisted of serving copies of its existing Statement of Objections to the PRO on the customers. Coastal also asserts, without elaboration, that it has been required "to make numerous filings in response to the various filings and discovery initiates of these customers." (Doc. No. 8 at 4). The hardship associated with customer participation of which Coastal chiefly complains, the "adversarial imbalance" and the expansion of the scope of the RO proceeding, arises after OHA's April 30, 1979 Decision and Order. Moreover, there is nothing in the record to suggest that OHA's December, 1978 consideration of the customer participation issue rendered fair consideration of Coastal's March 20, 1979 filing impossible. *Cf. King v. Caesar Rodney School District,* 380 F.Supp. 1112, 1119 (D.Del.1974). In light of the conclusion that any violation of Coastal's right to due process was cured by OHA's later consideration of Coastal's position, it is unnecessary to determine whether the prejudgment of this issue was sufficiently egregious to come within the fundamental infirmity exception.

## III. CONCLUSION

For the foregoing reasons, Coastal's motion for a preliminary injunction must be denied and DOE's motion to dismiss the complaint must be granted.