**TEXAS ENERGY RESERVE CORPORATION, Plaintiff-Appellant,**

v.

**DEPARTMENT OF ENERGY and James B. Edwards, Secretary of Energy, Defendants-Appellees.**

**RFB PETROLEUM, INC. and Hideca Petroleum Corporation, Plaintiffs-Appellants,**

v.

**DEPARTMENT OF ENERGY, Defendant-Appellee.**

**Nos. 3–30, 3–31.**

Temporary Emergency Court of Appeals.

Argued Oct. 13, 1982.

Decided May 26, 1983.

Simeon T. Lake, Fulbright & Jaworski, Houston, Tex., with whom, A. Frank Koury and Mary K. Mullenhoff, Houston, Tex., for plaintiffs-appellants; William O. LaMotte, III, Morris, Nichols, Arsht & Tunnel, Wilmington, Del., for plaintiff-appellant, Texas Energy Reserve Corp.; James V. Carroll, III, James R. Myers, Andrews & Kurth, Washington, D.C., for plaintiff-appellant, RFB Petroleum, Inc.; and Robert P. Knapp, III, Hale, Russell & Gray, New York City, for plaintiff-appellant, Hideca Petroleum Corp., were on brief for plaintiffs-appellants.

Thomas H. Peebles, Dept. of Justice, Washington, D.C., with whom, J. Paul McGrath, Asst. Atty. Gen., and Stephen E. Hart, Washington, D.C., of the same agency; Thomas H. Kemp and Judith A. Mather of counsel, Dept. of Energy, Washington, D.C., were on brief for defendants-appellees.

Before BONSAL, HOFFMAN and LACEY, Judges.

LACEY, Judge.

On December 31, 1980, plaintiff-appellant, Texas Energy Reserve Corporation (Texas Energy), instituted this action in the District Court of Delaware for preenforcement judicial review of certain Department of Energy (DOE) regulations governing the resale of crude oil—the so-called layering and pipeline transfer rules, 10 C.F.R. § 212.186 (1981) and 10 C.F.R. § 212.183 (1981)—and a final interpretation of these rules. 45 Fed.Reg. 74,437 (1980). Texas Energy, challenging these rules, sought to enjoin their enforcement. On January 20, 1981, RFB Petroleum, Inc. (RFB), instituted a similar action in the District of Delaware. RFB's complaint was amended on May 4, 1981, to add Hideca Petroleum Corporation (Hideca) as a plaintiff.

DOE, moving to dismiss both actions on ripeness and exhaustion grounds, also raised venue objections. Given the identity of the principal issues in the two actions, the district court consolidated the cases for oral argument and decision; thereafter, on March 31, 1982, that court held that venue was proper and that appellants met the constitutional requirements of concreteness and adversity. The court nonetheless dismissed both actions for lack of ripeness, and it is from this dismissal that appellants appeal.

## STATUTORY AND REGULATORY BACKGROUND

The regulations in question originally were promulgated under the Emergency Petroleum Allocation Act of 1973 (EPAA or Act), 15 U.S.C. §§ 751 et seq., which be-

came law on November 27, 1973. The Act required the President to promulgate a regulation providing for the mandatory allocation of crude oil, residual fuel oil, and refined petroleum products. 15 U.S.C. § 753(a). The Act further contained nine specific objectives the regulation was to implement to the maximum extent practicable. *See* 15 U.S.C. § 753(b)(1)(A)–(I).

To carry out this mandate of the Act, the President established the Federal Energy Office (FEO). *See* Exec. Order No. 11,748, 38 Fed.Reg. 33,575 (1973). Among other responsibilities, FEO received the Cost of Living Council's price stabilization authority under the Economic Stabilization Act (ESA) with respect to petroleum products and crude oil. 39 Fed.Reg. 24 (1974); *see* 12 U.S.C. § 1904 note (Economic Stabilization Act of 1970). FEO issued Mandatory Petroleum Allocation and Price Regulations on January 15, 1974. 39 Fed.Reg. 1924 (1974).

On June 27, 1974, FEO's responsibility for regulation of petroleum pricing and allocation was transferred to the new Federal Energy Administration (FEA) established by the Federal Energy Administration Act, 15 U.S.C. §§ 761 *et seq.,* and executive order. Exec. Order 11,790, 39 Fed.Reg. 23,185 (1974). In 1977, this function passed to the Department of Energy under the Department of Energy Organization Act, 42 U.S.C. §§ 7101 *et seq.,* and Executive Order No. 12,009, 42 Fed.Reg. 46,267 (1977).

From 1971 to 1974 crude oil resales were governed by 10 C.F.R. part 212, Subpart F. These regulations established a maximum lawful price for resales of crude oil equal to the weighted average price that the crude oil reseller had charged for comparable crude oil on May 15, 1973, plus the amount by which the reseller's cost of purchasing crude oil had increased since that date. 10 C.F.R. § 212.93 (1978).

On January 1, 1978, Subpart L to 10 C.F.R. Part 212 went into effect. Subpart L, governing only resales of crude oil, generally permitted a crude oil reseller to charge any price in an individual resale, as long as the reseller's "average mark up" did not exceed its "permissible average mark up" (PAM). 10 C.F.R. § 212.183(a). These resales were further governed by the so-called "layering" rule, which provided that "[t]he price for crude oil charged by a reseller which in a sale performs no service or other function traditionally and historically associated with the resale of crude oil shall not exceed the actual price paid by the reseller of the crude oil...." 10 C.F.R. § 212.186.

The two challenged regulations were promulgated on December 1, 1980. DOE amended the pricing rule to provide for a PAM of 20 cents per barrel for all resellers who had sold crude oil before December 1, 1977. 10 C.F.R. § 212.182 (1980); the agency also amended the pricing rule which had permitted a reseller to charge any price in an individual sale. The amended rule provided that

if between the time of resale of crude oil by a reseller (1) the crude oil remained in the same physical location or (2) such reseller did not take actual physical possession of the crude oil, the reseller shall not charge a price for that crude oil which exceeds the acquisition cost of that crude oil....

10 C.F.R. § 212.183(a).

On January 30, 1981, President Reagan, by executive order, exempted all crude oil and refined petroleum products from the price and allocation controls adopted pursuant to the EPAA. Exec. Order No. 12,287, 46 Fed.Reg. 9909 (1981).

Appellants, as crude oil resellers, attacked the December 1, 1980, regulations as procedurally and substantively invalid. They alleged that the regulations were based on the erroneous assumption that crude oil traders do not perform a function or service traditionally and historically associated with crude oil resale. They also argued that DOE promulgated the regulations in excess of its statutory authority under the EPAA, and that the regulations were arbitrary and capricious, void for vagueness, and violated the just compensation, procedural due process, and equal protection guarantees of the Constitution. Additional-

ly, appellants charged that the rules were procedurally invalid because of alleged defects in their promulgation.

Hideca and RFB Petroleum have each received a Notice Of Probable Violation (NOPV) from DOE under the regulations. DOE audited Texas Energy in January 1981, but as yet Texas Energy has not received an NOPV. The crude oil resellers do not challenge the pending enforcement actions within the agency, but rather the regulations themselves.

## DISPOSITION IN THE COURT BELOW

In arguing on the ripeness issue in the district court, appellants contended that *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and its companion cases, *Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), and *Gardner v. Toilet Goods Ass'n,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967) (the *Abbott Laboratories* trilogy), were not applicable for determining ripeness in the context of pre-enforcement review of DOE regulations. Asserting that *Abbott Laboratories* was grounded in the notion that standards of judicial review were measured by the jurisdiction grant of section 10 of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–04, the appellants noted that in *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Supreme Court held that "the better view is that the APA is not be be interpreted as an implied grant of subject-matter jurisdiction to review agency action" *id.* at 105, 97 S.Ct. at 984, and that courts must instead look to substantive grants of jurisdiction from Congress. Appellants thus contended that the district court should not apply the *Abbott Laboratories* criteria to determine ripeness, but rather should look to the broad conferring of rights in section 210(a) of the ESA. *See* 12 U.S.C. § 1904 note (Economic Stabilization Act). That section provides: "Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States." Section 211(a) of the ESA grants the district courts exclusive original jurisdiction of "cases and controversies" arising under the Act.

Thus, appellants argued, the district court had only to determine whether they had suffered a "legal wrong," without regard to the traditional ripeness criteria, in ruling on the motion to dismiss.

The district court rejected appellants' arguments and held that the *Abbott Laboratories* criteria for determining ripeness applied to actions brought under the ESA, noting that *Abbott Laboratories* concerned two issues. The first was "whether Congress by the Federal Food, Drug, and Cosmetic Act intended to forbid pre-enforcement review of this sort of regulation promulgated by the Commissioner." 387 U.S. at 139, 87 S.Ct. at 1510. Finding this not to be the case, only then did the Court, in considering the issue of ripeness, advance its now well-settled criteria. As the district court observed:

> The ripeness criteria traditionally applied by the courts are derived from the second *Abbott Laboratories* inquiry, not the first. *Califano v. Sanders* in no way undercuts the traditional ripeness analysis because its holding addressed the first question treated in *Abbott Laboratories* —reviewability in the jurisdictional sense. Thus the language of the Economic Stabilization Act relied upon by plaintiffs "has not dispensed with the requirements of final agency action . . . as considerations of ripeness and exhaustion of administrative remedies must still be accommodated."

*Texas Energy Reserve Corp. v. DOE,* 535 F.Supp. 615, 623 (D.Del.1982), quoting *Coastal States Gas Corp. v. DOE,* 495 F.Supp. 1300, 1305 n. 4 (D.Del.1980).

Appellants also argued alternatively below that, even assuming *Abbott Laboratories* applied, they had satisfied its ripeness criteria. The district court first stated these criteria:

> [A] controversy is ripe for pre-enforcement judicial review if an affirmative answer can be given to the following four

questions: (1) are the issues presented purely legal, (2) are the issues based on final agency action, (3) does the controversy have a direct and immediate impact on the plaintiff's businesses, and (4) is the litigation calculated to expedite final resolution rather than delay or impede effective enforcement? *Texas Energy Reserve Corp. v. DOE, supra,* 535 F.Supp. at 623, quoting *Phillips Petroleum Co. v. FEA,* 435 F.Supp. 1239, 1245 (D.Del.1977), aff'd, 596 F.2d 1029 (TECA 1978). Then, applying this test, the district court found that, while the issues presented were purely legal and based on final agency action, the appellants had not shown the requisite direct and immediate impact of these regulations on them and held that the case was not ripe for pre-enforcement review.

## ISSUES ON APPEAL

█ On this appeal, the parties reiterate the positions taken in the district court. Thus, appellants continue to contend that the *Abbott Laboratories* trilogy and its progeny do not apply in a situation involving challenges to agency action under the ESA. Nonetheless, the appellants concede as they must that this court has expressly applied the ripeness test of *Abbott Laboratories* to determine the availability of judicial review of agency action under the ESA as incorporated in the EPAA. *See, e.g., National Distillers and Chemical Corp. v. DOE,* 662 F.2d 754 (TECA 1981); *Marathon Oil v. DOE,* 642 F.2d 436, 438 (TECA 1981); *Standard Oil Co. v. DOE,* 596 F.2d 1029, 1039 (TECA 1978). We agree with the district court's rejection of the appellants' contention and its determination that an *Abbott Laboratories* ripeness analysis was mandated.

We now address appellants' second contention, that even if *Abbott Laboratories* is applicable, the district court erred in concluding that the *Abbott Laboratories* criteria were not met and that appellants thereby were not entitled to pre-enforcement review.

The district court determined that there was not a direct and immediate impact on appellants' business largely because the appellants could not satisfy the requirement of showing they were in a "horns-of-a-dilemma" situation. The Supreme Court had stated in *Abbott Laboratories:*

Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedure Act and the Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstance. . . .

387 U.S. at 153, 87 S.Ct. at 1517. The district court found that appellants' potential liability for alleged pricing violations did not satisfy the test, stating:

The mere fact that adjudication resolves uncertainty does not mean that a potential liability from a previously effective regulation constitutes a direct and immediate impact stemming from the existence of that regulation. In an ordinary pricing dilemma, once the court declares the regulation void, the company is relieved of its hardship—the burden of conforming its conduct to the regulation. This immediacy is missing when there is no dilemma, because even if the court finds the regulation invalid, this step alone does not remedy the hardship. The hardship in this instance is not compliance with a regulation, but inability to plan around a large liability. It is eliminated only because the removal of the potential liability enables the business to operate without fear of financial loss. This impact on business is not sufficiently direct and immediate to justify the Court in the adjudication of whether or not two now-defunct regulations were validly promulgated.

*Texas Energy Reserve Corp. v. DOE, supra,* 535 F.Supp. at 627.

In addition to finding that there was "no dilemma," the district court also evaluated

appellants' claim of other hardship. Thus the court also considered "whether the magnitude of harm is so great in this case that the Court should look beyond traditional ripeness criteria to grant immediate review." *Id.* It concluded that the harm alleges was of a magnitude insufficient to justify immediate judicial review.

■ Whether, under the clearly erroneous standard, or our own independent review of the submissions, our determination is the same:[1] the district court correctly determined that the appellants had failed to demonstrate the requisite direct and immediate impact upon them of the challenged regulations so as to satisfy the hardship requirement for pre-enforcement review.

Appellants relied heavily in the district court on our decision in *Standard Oil Company v. DOE, supra.* In *Standard Oil* this court held the hardship test had been satisfied where the company demonstrated that it had suffered the following adverse consequences from the challenged DOE interpretations of regulations:

(1) The impact of the FEA's interpretation on the refiners' budgeting and planning functions; (2) the exposure to multiple private, civil enforcement court litigation; (3) the burdensome expense and discovery strategy which the exception proceedings would entail; and (4) the damage to the refiners' reputations and good will stemming from the FEA's public announcement of its interpretation and the consequent conclusion by the public of an overcharge by the refiners. 596 F.2d at 1039–40. In this case, appellants argue in the district court that the hardship they faced stemmed solely from the potential liability resulting from an agency finding of violation. *See Texas Energy Reserve Corp. v. DOE, supra,* 535 F.Supp. at 627 n. 12. We find *Standard Oil* distinguishable. In this case appellants have advanced nothing more by way of hardship than that they faced substantial potential liability resulting from an agency finding of violation. The district court properly found that this potential liability, by itself, did not represent a direct and immediate impact from the challenged regulations.[2]

Accordingly, the judgment of the district court is AFFIRMED.[3]

---

1. *See Griggs v. Provident Consumer Discount Co.,* 680 F.2d 927, 931, n. 3 (3d Cir.), *rev'd on other grounds,* —— U.S. ——, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam).

2. The district court reviewed the affidavits filed by RFB Petroleum and Hideca, which affidavits had been filed under seal. These affidavits were to the effect that, "the enormous potential liability of the NOPV's [*sic*] has virtually destroyed their financial capabilities by hampering their ability to borrow money, and in RFB Petroleum's case, by eliminating it from crude oil trading entirely." *Texas Energy Reserve Corp. v. DOE, supra,* 535 F.Supp. at 627–28. The court also reviewed an affidavit submitted by general counsel for Texas Energy. *Id.* After review of these submissions, the district court concluded:

> The affidavits submitted by plaintiffs are conclusory at best, and fail to show a direct causal relationship between the challenged regulations and the plaintiffs' alleged business difficulties.... These affidavits do not set forth an injury of such magnitude as to outweigh other elements in the ripeness determination; the connection between DOE enforcement proceedings and the various financial woes are speculative at best.

535 F.Supp. at 628.

Appellants have submitted, post-argument, *Rocky Mountain Oil & Gas Ass'n v. Watt,* 696 F.2d 734 (10th Cir.1982), for our consideration. In *Rocky Mountain,* the district court expressly found, unlike the district court here, that plaintiffs had suffered irreparable financial harm as a result of the challenged regulations, which entitled plaintiffs to pre-enforcement review. The circuit court opinion states that the district court's conclusion on this point "clearly amounts to a factual finding," *id.* at 742, which would not be overturned unless clearly erroneous. If anything, *Rocky Mountain* militates affirmance of the district court's conclusion here that the harm claimed by plaintiffs was not "direct and immediate" because, as has been noted, we cannot conclude that this finding is clearly erroneous.

3. Appellees argue in their brief that the district court should have found that the issues in this lawsuit are not fit for judicial resolution because final agency action is not involved. Before oral argument, appellees supplemented their briefs with a recent case involving the issue of when agency action is final.

In *Natural Resources Defense Council, Inc. v. Nuclear Regulatory Commission,* 680 F.2d 810

BONSAL, Judge, dissenting:

I respectfully dissent.

It seems to me that, under the peculiar circumstances involved here, the controversy is ripe for judicial review. Two factors are most salient. In the first place, the regulations at issue were promulgated on December 1, 1980, at a time when the power of DOE to issue such regulations was widely considered to be on the verge of extinction. Secondly, the regulations were promulgated only two months before DOE's power to enforce them was removed by the President's Executive Order of January 31, 1981, exempting all crude oil products from price controls.

The Federal District Court in Delaware has articulated four tests for determining ripeness pursuant to the Supreme Court's holding in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). I believe that all four are satisfied here: (1) the issues presented are purely legal; (2) they are based on final agency action; (3) the controversy has a direct and immediate impact on plaintiffs' businesses, in requiring them to establish and maintain a very substantial reserve to cover their potential liability if their interpretation of the regulations is incorrect; and (4) determination of the validity of these regulations at this time would certainly expedite rather than delay effective agency enforcement. Phillips Petroleum Co. v. FEA, 435 F.Supp. 1239, 1245 (D.Del.1977), aff'd sub nom. Standard Oil Co. v. DOE, 596 F.2d 1029 (Temp.Emer.Ct.App.1978). There is no serious dispute about the existence of the first two requirements in this case.

With respect to the third requirement, while appellants are not on the "horns of a dilemma" in the traditional sense, as price controls are no longer in effect, their businesses have been directly and immediately affected by DOE's action (or inaction). In Standard Oil v. DOE, 596 F.2d 1029, 1039–40 (Temp.Emer.Ct.App.1978), this court found sufficient hardship on the basis of: (1) the impact of the agency's interpretation on the refiners' budgeting and planning functions; (2) the exposure to multiple private litigation; (3) the burdensome expense and discovery which the proceedings would entail; and (4) the damage to the refiners' reputations and goodwill stemming from the agency's interpretation and the consequent conclusion by the public of an overcharge by the refiners. It seems to me that most, if not all, of these elements

---

(D.C.Cir.1982), plaintiffs petitioned for review of the promulgation of the so-called "military functions" rule and the application of that rule to hearings which were pending before the NRC. The rule had been promulgated in response to plaintiffs' demand of the NRC for a full adjudicatory hearing on the issue of whether amendments to a nuclear license should be permitted. The rule limited participation in the hearings, and was promulgated without notice and an opportunity to comment. Before a hearing by the court on these challenges, the rule was validly noticed in the Federal Register, and an opportunity for comment was provided. Nevertheless, plaintiffs argued that the rules were invalidly promulgated and could not be applied to the pending hearings by reason of procedural and substantive infirmities.

The court dismissed the challenges as to the failure to give notice as moot. As to the remaining substantive and procedural challenges, the court determined that the rule did not constitute final agency action. Section 189(b) of the Atomic Energy Act of 1954, 42 U.S.C. § 2239(b) (1976), provides for judicial review of "[a]ny final order" entered by the NRC in any proceeding "for the granting, suspending, re- voking, or amending of any license...." Id. § 2239(a). Under the corresponding jurisdictional provision, 28 U.S.C. § 2342(4) (1976), the court of appeals has exclusive jurisdiction to review "all final orders of the Atomic Energy Commission made reviewable by section 2239 of Title 42...." The court concluded that a final order in the adjudicatory proceedings would be a decision on the license amendments challenged by petitioners, and not a rule promulgated to control the proceedings leading to the decision whether or not to grant the requested amendments.

The appellees herein argue that an analogous situation exists here. A final order, under this argument, is not the regulations or interpretations which will be applied to appellants in the enforcement proceedings, but rather the final adjudication of whether there has been a violation of these regulations. Because of our disposition of the issue of whether the issues are otherwise ripe for judicial review, it is unnecessary to reach the issue of whether the challenged regulations constitute final agency action. See also Cities of Anaheim and Riverside, California v. Federal Energy Regulatory Commission, 692 F.2d 773 (D.C.Cir.1982).

are present here. While it may be that having to carry a large contingent liability on their books is not the sole cause of appellants' alleged financial problems, the likelihood that the liability will remain contingent for a long time to come will necessarily have a significant effect on their business planning. *Cf. Rocky Mountain Oil and Gas Association v. Watt,* 696 F.2d 734, 741–43 (10th Cir.1982) ("business-related economic harm" held sufficient to meet *Abbott* hardship requirement). Since the regulations were promulgated in December of 1980, it is likely that the statute of limitations has not yet run on private actions claiming overcharges by the appellants based on DOE's interpretation of those regulations; thus, exposure to civil litigation is a real possibility. It appears from the record that appellants have already suffered damage to their reputations as a result of publicity surrounding the enforcement of the amended PAM and layering rules. Finally, the expense associated with protracted administrative proceedings before a caretaker agency is not inconsiderable.

As to the fourth ripeness requirement, pre-enforcement judicial review of these regulations should assist the agency rather than hinder it. In the usual case, the deferral of judicial review until the agency has had a chance to act is merely a recognition of the agency's legitimate interest in enforcing the regulations promulgated by it. Furthermore, in the usual case a party challenging the validity of regulations can expect a reasonably prompt hearing before the relevant agency. Here, by contrast, the agency has shown little interest in enforcing the rescinded price control regulations and the appellants face a delay in obtaining a hearing that could last indefinitely, given the reduction in DOE's staff following the Executive Order. Thus, by allowing the district court to rule on the validity of the regulations at this time, we would simply be accelerating the enforcement process: if the regulations are held to be lawful, DOE can proceed to enforce them with much less reason for delay; if they are held to be unlawful, the issue will evaporate. *See DOE v. State of Louisiana,* 690 F.2d 180,

186–87 (Temp.Emer.Ct.App.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983); *Northern Natural Gas Co. v. DOE,* 464 F.Supp. 1145, 1155 (D.Del. 1979).

While I believe that we should be reluctant to create an exception to traditional ripeness requirements, I feel that the special circumstances of this case call upon us to recognize such an exception where the plaintiffs' hardship is compounded to this extent by the government's decision to strip an agency of its enforcement powers. It seems to me manifestly unfair for the government, on the one hand, to accuse the appellants of violating the regulations and, on the other, not to allow them to vindicate their position for several more years, when the government is itself responsible for issuing the regulations only two months prior to deciding that they should no longer be enforced.